GEORGIANA A. COMSTOCK, APPELLANT, V. ABRAHAM L. REED, TRUSTEE, ET AL., APPELLEES.

FILED OCTOBER 26, 1934. No. 28981.

*Murdock & Murdock* and *Arthur C. Pancoast*, for appellant.

*Morsman & Maxwell, William C. Ramsey, Sherman S. Welpton, Jr., Gaines, McGilton, McLaughlin & Gaines, Frank H. Woodland* and *Shotwell, Monsky, Grodinsky & Vance*, contra.

Heard before ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and LESLIE and RYAN, District Judges.

RYAN, District Judge.

This is an action brought by plaintiff as the *cestui que trust* of a trust created by the will of Mary D. Stoddard, who died testate on July 23, 1917, and whose will was probated in the county court of Douglas county, Nebraska. This will, after making several specific bequests, provided in the sixth paragraph that deceased's husband, Elijah Stoddard, should take one-half of the estate in kind, so far as possible. The eighth paragraph of the will created the trust in favor of the plaintiff, which included the residue of the estate. It provided:

"I hereby give, devise and bequeath to Abraham L. Reed, trustee, all the rest and residue of my estate, real, personal and mixed, wherever situate (including that bequeathed to my said husband, should he not survive me) in trust for the following purposes, to wit:

"(a) That said estate shall be converted into money within a reasonable time, and that same shall be then kept in good, safe interest bearing securities, and that the income on same be paid quarterly to my niece, Georgiana Comstock, of Providence, Rhode Island, for the term of her natural life.

"(b) On and after the date of the death of my said niece, Georgiana Comstock, the interest and income on all of the residue of my estate, heretofore paid to her, shall be paid quarterly, share and share alike, to the Young Women's Christian Association of Omaha, Nebraska, located at Seventeenth and Howard streets, and to the Old People's Home of Nos. 2214-2218 Wirt street, Omaha, Nebraska."

Elijah Stoddard survived his wife and subsequently died on January 27, 1929. The principal part of the trust estate, and the only part with which we are concerned in this action, was a tract of land containing one hundred acres, near that part of the city of Omaha formerly known as Benson. In this tract of land the trust estate owned an undivided one-half interest and Elijah Stoddard owned the other half interest. In the inventory of the estate of

Mary D. Stoddard this tract was appraised at $300 an acre. In 1919 Elijah Stoddard commenced a partition action in the district court for Douglas county, Nebraska, seeking a partition or sale of the premises. This action was subsequently dismissed. On the 24th of September, 1919, Elijah Stoddard and Abraham L. Reed, trustee, executed a real estate option to the defendant George & Company, giving said company an option for a period of sixty days to sell the premises for the consideration of $75,000. This option was afterward extended for another thirty days. This option appears to have been treated by the parties as an agency contract. On January 2, 1920, defendant George & Company negotiated a sale of the premises for the sum of $735 an acre and was paid a commission of $2,000 for the sale. The sum of $15,000 in cash was paid, from which the commission was deducted and one-half paid to the trustee and one-half to Elijah Stoddard. A deed was executed to Eleanor Peterson, who executed two notes and mortgages, one note to Abraham L. Reed, trustee, for the sum of $29,268, and another for a like amount to Elijah Stoddard. The interest on the Peterson note owned by the trust was paid in full until 1929 and a couple of partial payments were made thereafter. Eleanor Peterson was a clerk in the office of George & Company and had no interest in the premises. It appears from the testimony that the real purchaser was a syndicate made up of members of the Happy Hollow Club, who expected to sell this tract to the Happy Hollow Club for a golf course. This deal did not materialize. When the syndicate failed to make its payments an offer was made to deed the property to the holders of the mortgages. This offer was not accepted.

It also appears from the record that on April 19, 1928, Elijah Stoddard and his second wife, Idelle L. Stoddard, who is the mother of the plaintiff, executed a certain trust agreement with Peters Trust Company. Among the property constituting the principal of this trust was the $29,268 note and mortgage given to Elijah Stoddard by

Eleanor Peterson. On December 10, 1929, Peters Trust Company was adjudicated a bankrupt and the United States National Bank was afterward duly appointed as successor trustee by an order of court. Other charitable institutions appear as defendants in this action because of the fact that the trust agreement provided that the income from the trust property should go to these institutions after the death of the plaintiff and her husband. Plaintiff's petition is divided into two causes of action. In the first cause of action plaintiff sets forth the claim that George & Company was the real purchaser of the property and personally liable for the unpaid purchase price and seeks specific performance of the contract. In her second cause of action plaintiff asks for foreclosure of the mortgage and for a deficiency judgment against George & Company. Before bringing the action the plaintiff made demand upon the defendant Abraham L. Reed, as trustee, to bring the action for her use and benefit, and he refused to do so.

The trial court found in favor of the defendants and against the plaintiff and dismissed the petition of the plaintiff. Upon the cross-petitions of the defendants Abraham L. Reed, trustee, and of the United States National Bank, trustee, the trial court entered a decree foreclosing the mortgages for the amount found due thereon. There were other issues raised by the pleadings, but the court reserved these for further consideration and they were not disposed of in the trial. From the decree entered by the trial court and the order overruling plaintiff's motion for a new trial plaintiff appeals.

It is insisted by the appellant that George & Company purchased the 100-acre tract and should be held liable for the balance of the purchase price. The evidence, however, shows clearly that the transaction concerning the sale of the property was discussed with Elijah Stoddard and with Abraham L. Reed, trustee, and that they understood that George & Company was handling the deal merely as an agent. In fact, George & Company was paid an agent's commission upon the transaction. It further appears that

the sale was an advantageous one for the trust and that no advantage whatever was taken of the *cestui que trust*. On September 24, 1919, Elijah Stoddard brought the option to the office of the defendant Reed and was very insistent that Reed should join with him in executing it. Reed was unwilling to do this and made a great many objections to the deal as proposed. Stoddard persisted and would not consent to any changes in the terms of the instrument. He further stated, according to Mr. Reed's testimony: "Mr. Reed, I have a suit pending against you and my niece in partition; if you make any requirement that will make this sale a matter of greater difficulty or that will defeat the sale, I will proceed with my suit. I will have the land sold to the highest bidder, and it won't be this high a price, and you will be liable for any difference, both to me and my niece." The matter was discussed further and the advantages considered. From the standpoint of the appraised value of the land and from the increased income, the sale was of great benefit to the trust. The cash payment of $15,000, while it was rather small in comparison with the total purchase price, was half of the appraised value of the land and therefore a substantial payment. The defendant Reed testifies that he agreed to submit the option to his attorneys and to communicate with Mrs. Comstock, and if both approved the contract, he would sign it. He attempted to communicate with Mrs. Comstock by telegram. There is some conflict in the testimony as to whether or not these telegrams were received. She denies that they were received by her. The telegrams were sent September 25, 1919. On September 26, 1919, the plaintiff wired defendant Reed: "Will arrive in Omaha next week. Wait." This would seem to indicate that she received the telegrams. Defendant Reed further testifies that he held up this matter until after she arrived and expressed herself as being satisfied with the sale. The learned trial court apparently chose to believe his version of the matter, and, while this is a trial *de novo,* this court, in determining the weight of evidence, will consider the

fact that the trial court observed the witnesses and their manner of testifying. *Yardum v. Evans*, 120 Neb. 699. Moreover, we believe the record substantiates the defendant Reed's testimony rather than that of the plaintiff. The record shows that the partition suit was pending and that the sale of the premises could be forced by Elijah Stoddard at any time. It is also a well-known fact, and is amply supported by the testimony in the record, that an undivided one-half interest in a parcel of real estate will not sell for an amount equal to one-half the value of the entire tract. The trustee was at a disadvantage in the handling of the trust, inasmuch as it consisted of an undivided one-half interest in the real estate in question, and the owner of the other undivided one-half interest was, practically speaking, in a position to dictate to the trustee and had actually commenced a partition suit to compel the trustee to accede to his wishes. It appears that the defendant Reed has acted in good faith throughout and has exerted his best efforts on behalf of the trust estate.

As to the claim that defendant George & Company is liable for the payment of the balance of the sale price of the land in question or for any deficiency that might remain after the foreclosure of the notes and mortgages given by Eleanor Peterson, it clearly appears from the record that all of the parties connected with this transaction, except possibly the plaintiff, knew as soon as the transaction was completed that the notes and mortgages were executed by Eleanor Peterson, and that George & Company was not liable upon them and that it was never intended that George & Company should be liable upon them. As to the plaintiff, the record shows that at least as early as January, 1924, she became acquainted with the fact that George & Company was not the purchaser of the property and the note upon which she was receiving interest was executed by Eleanor Peterson. Section 62-118, Comp. St. 1929, provides: "No person is liable on the instrument whose signature does not appear thereon." The principle enunciated by this statute has

always been the law in this state and was laid down in cases decided prior to the passage of the negotiable instruments act, of which it is a part. *Webster v. Wray*, 19 Neb. 558; *Reeves v. Wilcox*, 35 Neb. 779; *Farrell v. Reed*, 46 Neb. 258; *Thornton v. Farmers & Merchants Nat. Bank*, 117 Neb. 355.

The judgment of the district court was right and is

AFFIRMED.